UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00045-GNS

JOE DOE,
on behalf of himself
and others similarly situated                                                    PLAINTIFF

v.

JOHN BURLEW,
in his official capacity as
Daviess County Attorney,
and on behalf of all County Attorneys
in their official capacities                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (DN 12), Defendant's Cross Motion for Summary Judgment (DN 19), and Plaintiff's Emergency Motion for Temporary Restraining Order (DN 22). The motions are ripe for adjudication.[1]

## I.   BACKGROUND

During the 2024 legislative session, the Kentucky General Assembly passed and Governor Andy Beshear signed into law Senate Bill 249. *See* S.B. 249, 2024 Ky. Gen. Assemb., Reg. Sess. (codified as KRS 17.544). This challenged law is added to the sex offender registration statutes and provides:

(1)     As used in this section, "social media platform":
(a)     Means a website or application that is open to the public, allows a user to create an account, and enables users to do all of the following:
1.     Interact socially with other users within the confines of the website or application;
2.     Construct a public or semipublic profile for the purpose of signing into and using the website or application;

---

[1] Plaintiff's pending motion for class certification (DN 13) will be addressed by separate order.

1

3.      Populate a list of other users with whom an individual shares or has the ability to share a social connection within the website or application; and

4.      Create or post content viewable by others, including on message boards, chat rooms, video channels, direct or private messages, or chats, or on a landing page or main feed that presents the user with content generated by other users; and

(b)    Does not include:

1.      A broadband internet access service as defined by the Federal Communications Commission;

2.      An electronic mail service;

3.      A search engine service;

4.      A cloud storage or cloud computing service;

5.      An online service, application, or website in which interaction between users is limited to reviewing products offered for sale by electronic commerce or commenting on reviews posted by other users; or

6.      An online service, application, or website:

a.      That consists primarily of information or content that is not user-generated but is preselected by the provider; and

b.      For which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent upon the provision of the content described by subdivision a. of this subparagraph.

(2)    A registrant who has committed a criminal offense against a victim who is a minor shall not create or have control of an account on a social media platform unless the account displays his or her full legal name.

(3)    This section shall apply retroactively.

(4)    Any person who violates subsection (2) of this section shall be guilty of a Class A misdemeanor for the first offense, and a Class D felony for a second or subsequent offense.

KRS 17.544 (effective July 15, 2024).

Plaintiff John Doe ("Doe") filed this action on his own behalf and on behalf of others similarly situated against Defendant John Burlew ("Burlew"), in his official capacity as Daviess County Attorney and on behalf of all County Attorneys in their official capacities. (Am. Compl. ¶ 5, DN 11). Doe asserts two claims under 42 U.S.C. § 1983 for violations of his constitutional rights under the First Amendment. (Am. Compl. ¶¶ 53-67). In particular, Doe claims that the

2

challenged law violates his right to speak anonymously and is unconstitutionally overbroad.  (Am. Compl. ¶¶ 53-67).

Doe moved for a preliminary injunction and for class certification.  (Pl.'s Mot. Prelim. Inj., DN 12; Pl.'s Mot. Class Certification, DN 13).  Burlew opposed both motions and cross-moved for summary judgment.  (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J., DN 19).  Due to the impending effective date of KRS 17.544, Doe moved for a temporary restraining order, which Burlew likewise opposed.  (Pl.'s Mot. TRO, DN 22; Def.'s Resp. Pl.'s Mot. TRO, DN 23).

## II.   DISCUSSION

### A.   Defendant's Cross Motion for Summary Judgment

Doe's motions require the Court to consider the potential merits of his claims.  Because Burlew's cross-motion seeks summary judgment on the merits of the claims and dismissal of this case, the Court will consider Burlew's cross-motion first.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'"  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim.  *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's

claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

In seeking summary judgment at this stage, Burlew contends that both of Doe's claims are facial challenges to KRS 17.544 and are therefore subject to the standard for overbreadth analysis rather than strict scrutiny. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 12-16). Applying the overbreadth standard, Burlew asserts that KRS 17.544 is not overboard. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 16-26).

Throughout his summary judgment motion, Burlew cites articles and studies relating to sex offenders and social media. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 19-21 nn.9-13, 23 n.15). While the Court may consider such sources in ruling this motion, Burlew tacitly acknowledges that the resolution of the merits of Doe's claims may necessarily involve factual issues.

Because this matter is in its infancy and the parties have not engaged in any discovery, Doe opposes the entry of summary judgment at this stage because underlying factual issues may be necessary to resolve the pending claims. (Pl.'s Consolidated Reply & Resp. Mots. Prelim. Inj., Class Certification, & Summ. J. 17-19, DN 21). In accordance with Fed. R. Civ. P. 56(d), Doe has submitted an affidavit from counsel stating:

> [T]here are certain facts that are unavailable to the nonmovant at this stage in the proceedings and that Plaintiff believes Defendant Burlew and/or other agents of the Commonwealth are in possession of [facts] that are essential to justify Plaintiff's opposition.  These factual issues include, but are not limited to: the extent to which law enforcement has been unable to solve offenses occurring on social media for want of the offender not using their full legal name; the number of individuals in Kentucky the Statute applies to; any known convictions or arrests of individuals to whom the Statute applies for committing an offense against a minor on a social media platform, and whether or not they used their full legal name in doing so; and whether and to what extent law enforcement has investigated or arrested individuals for harassment or other crimes against individuals required to register on Kentucky's [sex offender registry].

(Hamilton-Smith Decl. ¶ 3, DN 21-1).

Upon consideration of the arguments of the parties, the Court agrees that at least some discovery may be necessary to resolve the issues in this case.  Accordingly, Burlew's motion is premature, and the summary judgment motion is denied at this time.

### B.    Plaintiff's Motions for Temporary Restraining Order and for Preliminary Injunction

In determining whether to grant a TRO or a preliminary injunction, a court considers the same factors.  *See Ne. Ohio Coal. for Homeless & Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  These factors are:  "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the [TRO or preliminary] injunction; (3) whether issuance of the [TRO or preliminary] injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the [TRO or preliminary] injunction."  *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).  "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."  *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citing *In re DeLorean Motor Co.*,

755 F.2d 1223, 1229 (6th Cir. 1985)).  A court should make specific findings concerning each factor, "unless fewer are dispositive of the issue."  *DeLorean*, 755 F.2d at 1228 (citing *United States v. Sch. Dist. of Ferndale*, 577 F.2d 1339, 1352 (6th Cir. 1978)).  The movant bears the burden of making a "clear showing" of the need for the grant of a temporary restraining order or a preliminary injunction.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Gonzales v. O Centro Espirita Beneficente Uniã do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").

### 1.     *Likelihood of Success on the Merits*

The first factor for consideration is the likelihood that Doe will prevail on the merits of his claims.  *See Tenke Corp.*, 511 F.3d at 542 (citation omitted).  Doe contends that KRS 17.544 impermissibly precludes anonymous speech on social media platforms by persons on the Kentucky Sex Offender Registry who committed crimes against minors and is overbroad.[2]  (Am. Compl. ¶¶ 53-67).

"Generally, to 'succeed in a typical facial attack,' a plaintiff must establish '"that no set of circumstances exists under which [the statute] would be valid."'  Or, a plaintiff would have to establish that 'the statute lacks any "plainly legitimate sweep[.]"'"  *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (alteration in original) (internal citation omitted) (citation omitted).  "Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the 'facial challenge' is an 'overbreadth challenge.'"  *Id.* (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)).  "Instead of having to prove

---

[2] The parties dispute whether Doe has asserted an as-applied challenge in Count 1 of the Amended Complaint.  While the prayer for relief in this count nominally asserts an as-applied challenge, it does not appear to be supported by the allegations preceding it.  (Am. Compl. 11; *see, e.g.*, Am. Compl. ¶ 59 ("Because of these infirmities, the Statute is facially unconstitutional.").  Because the overbreadth analysis applies to both facial claims, they are addressed together.

that no circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden:  to demonstrate that a substantial number of instances exist in which the law cannot be applied constitutionally."  *Id.* (internal quotation marks omitted).  Nevertheless, invalidation for overbreadth is """strong medicine""" that is not to be "casually employed."  *United States v. Williams*, 553 U.S. 285, 293 (2008) (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999)).

Doe posits that KRS 17.544 violates his First Amendment right to engage in anonymous speech because he is prohibited under the statute from making any post on any social media platform without using his full legal name.  (Pl.'s Mot. Prelim. Inj. 7-17).  As the Sixth Circuit has explained:

> An author's decision to remain anonymous is "an aspect of the freedom of speech protected by the First Amendment."  While the right to anonymous speech is paramount to protect the political speech of persecuted groups, it also protects advocates who "may believe [their] ideas will be more persuasive if [their] readers are unaware of [their] identity."  Internet speech receives the same First Amendment protection as other speech.  "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'"

*Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835-36 (6th Cir. 2017) (alterations in original) (internal citations omitted) (citation omitted); *see also Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) ("A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more.").  As the U.S. Supreme Court has stated, "the 'distinction between laws burdening and laws banning speech is but a matter of degree . . . .'"  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565-66 (2011) (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000)).  Nevertheless, "a state may permissibly infringe upon this right when its interest is important enough and the law is

appropriately tailored to meet the stated interest." *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1207 (M.D. Tenn. 2021) (quoting *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010)).

In arguing that the statute is constitutional, Burlew contends that requiring a registered sex offender to use his or her full legal name on social media platforms is not a content-based regulation. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 15-16). Burlew characterizes KRS 17.544 as only imposing a disclosure requirement and notes the lack of any evidence to suggest that the General Assembly enacted the statute because of any disagreement with messages or speech made by convicted sex offenders on social media platforms. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 14, 15-16).

Courts have recognized, however, that "the identity of the speaker is no different from other components of [a] document's contents that the author is free to include or exclude . . . ." *Am. C.L. Union of Ga. v. Miller*, 977 F. Supp. 1228, 1232 (N.D. Ga. 1997) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995)); *see also Rosemond v. Markham*, 135 F. Supp. 3d 574, 586 (E.D. Ky. 2015) ("If the state wants to regulate what facts are to be included about the identity of a speaker, then that regulation is content-based . . . ." (citing *McIntyre*, 514 U.S. at 348)); *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) ("[T]he Supreme Court has suggested a distinction between the mandatory disclosure in public of a speaker's identity and the requirement that a speaker provide information to the government that could later be used to trace speech back to its source."). The Supreme Court has held that a regulation "unconstitutionally burdened speech [when] it compelled identification 'at the precise moment when the [speaker]'s interest in anonymity is greatest.'" *Doe*, 628 F.3d at 1223 (quoting *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 199 (1999)). "Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression." *Peterson v.*

8

*Nat'l Telecomms. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007) (citing *Buckley*, 525 U.S. at 199). Thus, requiring Doe to disclose his full legal name on social media platforms as a prerequisite for engaging in any communications in those forums is an infringement on his First Amendment right to post anonymously.

Doe also alleges that KRS 17.544 is overbroad because it reaches a substantial amount of constitutionally protected conduct and is therefore unconstitutional. (Pl.'s Mot. Prelim. Inj. 17-23). As the Supreme Court has cautioned, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

Doe urges that KRS 17.544 is overbroad because it regulates all communications on social media platforms by persons on the Kentucky Sex Offender Registry. (Pl.'s Mot. Prelim. Inj. 17-23). Burlew argues that Kentucky has an interest in preventing the use of social media platforms by registered sex offenders to commit sex and enticement crimes against minors, and KRS 17.544 was drafted consistent with that interest. (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 19-23). As written, however, KRS 17.544 regulates all speech by Doe on social media platforms—not just the alleged harms or risks identified by Burlew. As Doe notes, this statute effectively regulates political, social, commercial, and familial speech. (Pl.'s Reply Mot. Prelim. Inj. 7-8, DN 20). The breadth of the speech regulated by the statute therefore substantially includes speech protected by the First Amendment.

*Speet v. Schuette* involved the First Amendment implications of a Michigan statute criminalizing begging in public places.  *See Speet*, 726 F.3d at 870.  Although factually distinguishable from the present case, the Sixth Circuit's analysis is instructive here, noting the broad impact of the law and that "[t]he statute simply bans an entire category of activity that the First Amendment protects."  *Id.* at 879.  In rejecting the stated reason for the law, the court explained that "Michigan's interest in preventing fraud can be better served by a statute that, instead of directly prohibiting begging, is more narrowly tailored to the specific conduct, such as fraud, that Michigan seeks to prohibit."  *Id.* at 880.  The court further reasoned:

> Where, as here, "the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack." Michigan may regulate begging. As the Supreme Court has said, "[s]oliciting financial support is undoubtedly subject to reasonable regulation [.]" But Michigan must regulate begging "with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues[.]"

*Id.*  (alterations in original) (internal citations omitted) (citation omitted); *see also Doe v. Prosecutor, Marion Cnty.*, 705 F.3d 694, 699 (7th Cir. 2013) ("[T]he state agrees there is nothing dangerous about Doe's use of social media as long as he does not improperly communicate with minors.  Further, there is no disagreement that illicit communication comprises a minuscule subset of the universe of social network activity.  As such, the Indiana law targets substantially more activity than the evil it seeks to redress.  Even the district court agreed with this sentiment, stating the law 'captures considerable conduct that has nothing to do' with minors.").

The reasoning of *Speet* applies in this instance.  Kentucky may criminalize the use of social media platforms to commit sexual and enticement crimes against minors, but may only do so consistent with the First Amendment.  Requiring Doe and other persons on the Kentucky Sex Offender Registry to use their full legal names for all communications on social media platforms

impermissibly infringes upon their First Amendment rights because KRS 17.544 mandates the use of a full legal name for all communications in those forums—not just the targeted danger—and such conduct is also prohibited by other statutes.

As noted above, a state may infringe upon First Amendment rights when a state's interests are important enough and the regulation is appropriately tailored to address those interests. *See Doe #1*, 518 F. Supp. 3d at 1207 (citation omitted).  Burlew asserts that KRS 17.544 is narrowly tailored to meet the Commonwealth's interests of protecting children from abuse generally, protecting children from abuse by enabling parents to see with whom their children are interacting on social media platforms, preventing the creation and spread of child sexual abuse material, and preserving and promoting the welfare of children.  (Def.'s Combined Resp. Pl.'s Mots. & Cross-Mot. Summ. J. 19-26).

As Doe points out, however, there are existing statutes—KRS 17.546 and KRS 510.155— that address some of the same interests that purportedly justify KRS 17.544.  KRS 17.546 prohibits registered sex offenders from using social networks, instant messaging, or chat room programs accessible by minors, with an exception for parents of children who are not otherwise prohibited from using such electronic communications by a court order or the terms of any probation, parole, or early release.  *See* KRS 17.546(1)(b)-(c).  KRS 510.155 forbids the use of electronic communications to induce a minor to engage in sexual or other prohibited activities.  *See* KRS 510.155(1).  Those statutes better serve Kentucky's interest in protecting children by specifically criminalizing conduct targeting children but do so without the constitutional infirmities of KRS 17.544.  *See Speet*, 726 F.3d at 880; *Doe*, 705 F.3d at 699.  Thus, KRS 17.544 is much broader than necessary to address the interests identified by the Commonwealth and impermissibly restrains speech protected by the First Amendment.

For these reasons, Doe has a strongly likelihood of prevailing on the merits of his claims. Thus, this factor weighs in favor of granting the preliminary injunction.

### 2.    *Remaining Factors*

The Court must also consider whether Doe will suffer irreparable injury absent the granting of a TRO or preliminary injunction, whether others will be substantially harmed by granting such relief, and whether any public interest would be served by granting the relief.  *See Tenke Corp.*, 511 F.3d at 542 (citation omitted).  "[T]he Supreme Court [has] held that when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."  *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  As discussed above, Doe's First Amendment rights are threatened and would be impaired by the enforcement of KRS 17.544, and he has therefore shown irreparable injury to support the issuance of an injunction.

The first two preliminary injunction factors both strongly weigh in favor of granting the preliminary injunction to maintain the status quo pending the resolution of this matter and are dispositive of the issue.  *See DeLorean*, 755 F.2d at 1228 (citation omitted).  Accordingly, the Court declines to consider the remaining factors and grants Doe's motion for a preliminary injunction.

### 3.    *Scope of the Preliminary Injunction*

The remaining issue is the proper scope of the preliminary injunction.  Doe contends that the injunction should apply to all Plaintiff and Defendant class members and that class certification is not necessary before granting such broad relief.  (Pl.'s Mot. Prelim. Inj. 23-24).  "[A] district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its

general equity powers." *Thomas v. Johnston*, 557 F. Supp. 879, 917 (W.D. Tex. 1983) (citation omitted); *see also Lee v. Orr*, No. 13-CV-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers.   The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons."   (internal quotation marks) (citation omitted); *Kaiser v. Cnty. of Sacramento*, 780 F. Supp. 1309, 1312 (E.D. Cal. 1991) (granting class-wide injunctive relief even though the court had only provisionally certified the class and had not yet fully addressed the defendants' class certification arguments).

KRS 17.544 applies to all persons on the Kentucky Sex Offender Registry, and the failure any one of those persons to comply with KRS 17.544 subjects that person to the criminal penalties in the statute.   While the Court will rule separately on the motion for class certification, "there is nothing improper about a preliminary injunction preceding a ruling on class certification." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012).

Accordingly, Doe's motion for preliminary injunction is granted pending a resolution of this matter on the merits, and Burlew is enjoined from enforcing KRS 17.544.[3]

### III.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motion for Preliminary Injunction (DN 12) is **GRANTED**.   Defendant John   Burlew   and   all   County   Attorneys   in   the   Commonwealth   of   Kentucky   are **PRELIMINARILY ENJOINED** from enforcing, attempting to enforce, threatening to enforce,

---

[3] Due to the Court's ruling on the motion for a preliminary injunction, the motion for a TRO is denied as moot.

or otherwise requiring compliance with KRS 17.544.  The requirement of security under Fed. R. Civ. P. 65(c) is waived due to the strong public interest involved.

      2.      Plaintiff's Emergency Motion for Temporary Restraining Order (DN 22) is **DENIED AS MOOT**.

      3.      Defendant's Cross-Motion for Summary Judgment (DN 19) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

July 12, 2024

cc:    counsel of record