UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00045-GNS

JOHN DOE PLAINTIFF

v.

JOHN BURLEW, in his official
capacity as Daviess County Attorney DEFENDANT

**MEMORANDUM AND OPINION ORDER**

This matter is before the court on Defendant's Motion to Dismiss (DN 50). The motion is ripe for adjudication. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. STATEMENT OF FACTS

On April 17, 2024, Kentucky Governor Beshear signed into law KRS 17.544, which imposes restrictions on the use of social platforms by certain persons. (2d Am. Compl. ¶ 12, DN 44). This statute prohibits a person who has committed a criminal offense against a minor and is subject to Kentucky's sex offender registration scheme from creating or having control of a social media account unless the account displays his or her full legal name. (2d Am. Compl. ¶ 8). Plaintiff John Doe ("Doe") was convicted in 2015 in Kentucky state court of an offense which requires him to register as a sex offender pursuant to the Sex Offender Registration Act ("SORA"). (2d Am. Compl. ¶ 17).

Before the enactment of KRS 17.544, Doe maintained anonymous social media accounts on X and Reddit, but he has since ceased operating or controlling these accounts lest he be criminally charged under the statute. (2d Am. Compl. ¶¶ 21, 31). While maintaining those accounts, Doe alleges that in addition to engaging with friends and family, he engaged in highly

unpopular political advocacy regarding how SORA laws are ineffective and unfairly harm his wife and children. (2d Am. Compl. ¶¶ 23, 25). Due to this political advocacy and his openness about his SORA registration requirements, Doe alleges he has received harassment online in the form of threats against his safety and the safety of his children. (2d Am. Compl. ¶ 26). Not only that, but Doe has also received harassment in response to opinions on topics unrelated to SORA from people who have used his status as a registrant to dismiss any opinion he holds. (2d Am. Compl. ¶ 28). Doe alleges that he is concerned for the safety of his wife and children, who live with him, should he be forced to identify himself publicly when engaging in online discourse. (2d Am. Compl. ¶ 29).

Due to his concerns regarding harm to himself and his family, Doe filed his initial Complaint on April 29, 2024, against Defendant John Burlew ("Burlew"), Daviess County Attorney, requesting the Court declare KRS 17.544 unconstitutional and enter an injunction preventing its enforcement. (Compl., DN 1). This Court granted a preliminary injunction on July 12, 2024, and that order was appealed to the Sixth Circuit Court of Appeals. (Mem. Op. & Order DN 26). The Sixth Circuit vacated the preliminary injunction in *Doe v. Burlew*, 165 F.4th 525, 532 (6th Cir. 2026), and remanded the case back to this Court for further proceedings consistent with that opinion. Doe then filed an amended complaint seeking to have KRS 17.544 held unconstitutional both facially and as applied to him as a restriction on his First Amendment freedom of speech. (2d Am. Compl.). Burlew responded, requesting the Court dismiss the complaint for failure to state a claim upon which relief can be granted. (Def.'s Mot. Dismiss 1, DN 50).

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented pursuant to 42 U.S.C. § 1983.

## III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555 (citation omitted). Furthermore, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Despite its leniency, "[the plausibility standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

To prove a claim under Section 1983, "[a] plaintiff must establish both that 1) [he] was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). In the Second Amended Complaint, Doe alleges that KRS 17.544 deprives him of his First Amendment rights. He challenges the Kentucky law both on its face and as applied to him. Each challenge and the associated legal theories are discussed below.

**A. Facial Challenges**

Doe first realleges his facial challenges, this time relying on two different constitutional doctrines, arguing that the construction of the law itself is what prevents the law from being constitutionally applied in any circumstance. (Pl.'s Resp. Def.'s Mot. Dismiss 3, DN 52). The Supreme Court has "made facial challenges hard to win[,]" even in First Amendment claims. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). This is because "[c]laims of facial invalidity often rest on speculation" and "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (internal quotation marks omitted) (internal citation omitted) (citation omitted); *see also Burlew*, 165 F.4th at 532. On remand, Doe has specifically avoided arguing that the statute is facially overbroad and instead argues that "there is no constitutional application of the law." (Pl.'s Resp. Def.'s Mot. Dismiss 3). This means that he is essentially forgoing the "easier-to-meet [two-step] test" outlined in *NetChoice* and explained in *Burlew* in favor of arguing that the "law violates [free speech] right[s] in all its potential applications." *Burlew*, 165 F.4th at 529, 532-33. Each legal doctrine will be discussed in turn.

**1. *Unconstitutional Conditions Doctrine***

Doe claims that the Kentucky statute conditions free speech on social media upon disclosure of his full legal name. (2d Am. Compl. ¶¶ 48-55). He argues that the statute compels him to give up one constitutional right or the other, the right to speak anonymously or the right to speak on social media at all, therefore unconstitutionally conditioning exercise of his rights upon forgoing a right. (2d Am. Compl. ¶ 52). According to Doe, this defect in statutory construction forces every person to whom the statute applies into making this decision, rendering the statute facially unconstitutional. (2d Am. Compl. ¶ 53).

The unconstitutional conditions doctrine prevents the government from indirectly interfering with a constitutional right and extracting a waiver of that right by offering a benefit in exchange. *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 823-24 (6th Cir. 2023). Put simply, the doctrine prevents the government from "coercing people into giving [up their enumerated rights]." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). The Constitution does not contain an all-encompassing "Unconstitutional Conditions Clause," meaning that courts must look to the specific constitutional right at issue in order to determine the test to be applied. *Knight*, 67 F.4th at 824 (citation omitted).

Regardless of the particular right at issue, the unconstitutional conditions doctrine applies specifically in the public benefits context. In *Gmeiner v. Kent*, 181 F.4th 677 (6th Cir. 2026), the Sixth Circuit explained that "[a] typical constitutional claim seeks to stop the government's use of its coercive powers[,]" such as a challenge to a law under the free speech clause, which makes certain speech illegal and enforces that speech ban through a criminal sanction. *Id.* at 682. "The 'unconstitutional-conditions' doctrine *addresses a different problem*." *Id.* (emphasis added). That problem is when modern governments provide benefits, they have no duty to provide and condition receipt of those benefits on waiver of a constitutional right. *Id.* The unconstitutional conditions doctrine has been regularly applied in such cases. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 209-10, 213 (2013) (prohibiting certain speech as a condition for receipt of grant money); *Sheetz v. Cnty of El Dorado*, 601 U.S. 267, 272, 274-76 (2024) (requiring a "traffic impact fee" as a condition of receiving a building permit); *Perry v. Sindermann*, 408 U.S. 593, 595-96 (1972) (public employment was withheld solely on the basis of the plaintiff exercising his freedom of speech).

The challenged statute does not provide a public benefit, such as grant money, a building permit, or a public job, to the person who complies. It simply requires an action under threat of criminal punishment. To extend the unconstitutional conditions doctrine to this case where a criminal statute directly burdens the exercise of an enumerated right would be to stretch the doctrine beyond any circumstances in which the Supreme Court or the Sixth Circuit have recognized and applied it.[1]

Doe has brought a typical constitutional challenge against this law, arguing that it both compels his speech and restricts his freedom of speech. (*See generally* 2d Am. Compl.). There is no public benefit involved; therefore the unconstitutional conditions doctrine does not apply and no plausible claim for relief can be alleged under it. The claim is dismissed.

**2. *Compelled Speech***

Doe next argues that the statute is facially unconstitutional because it compels every person to which it applies to speak their full legal name on social media, even if they would rather not. (2d Am. Compl. ¶¶ 59-60). The First Amendment guarantees the freedom to decide "both what to say and what *not* to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988). "[O]utside [of the commercial] context [the government] may not compel affirmance of a

---

[1] Doe additionally argues that "[t]he Sixth Circuit has recently observed that the [unconstitutional conditions doctrine] is flexible . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 17-18 (citing *Knight*, 67 F.4th at 833)). Doe quotes *Knight v. Metropolitan Government of Nashville*, in which that court stated that "[t]o be sure, the specific unconstitutional-conditions test depends on the specific right at issue." *Knight*, 67 F.4th at 833 (citation omitted). The "flexibility" to which Doe alludes does not refer to the unique context in which the doctrine is applied—i.e., public benefits. The Sixth Circuit is instead referring to the specifics of the *test* applied to whatever constitutional right is given up in exchange for the public benefit. The public benefit part is not flexible. *See also Gmeiner*, 181 F.4th at 684 (discussing how one unconstitutional conditions test does not apply across all constitutional rights but rather one test applies to the Takings Clause, and another applies to the Petitions Clause). It would be inappropriate to assume that by recognizing that different tests exist for different rights, the Sixth Circuit intended to expand the unconstitutional conditions doctrine beyond the public benefits context.

belief with which the speaker disagrees." *Does v. Whitmer*, 751 F. Supp. 3d 761, 822 (E.D. Mich. 2024) (alterations in original) (internal quotation marks omitted) (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995)). "[T]his general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." *Id.* (internal quotation marks omitted) (quoting *Hurley*, 515 U.S. at 573). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley*, 487 U.S. at 795. "[Such] laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted).

In making his compelled speech argument, Doe specifies he does not contend that Kentucky's statute is overly broad. (Pl.'s Resp. Def.'s Mot. Dismiss 3). He states that "Mr. Burlew seems to be under the impression that Mr. Doe persists in the overbreadth challenge . . . . Instead, Mr. Doe brings a trio of counts . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 3). Doe argues that as "[a]pplied to Mr. Doe and in every application of it, it requires people to say something. If they don't they get sent to jail . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 19). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). For the following reasons, the Court holds that Doe has plausibly alleged that KRS 17.544 facially violates the Constitution as a statute compelling speech.

Even though facial challenges are demanding, success is possible. In *Sanderson v. Hanaway*, 163 F.4th 1101 (8th Cir. 2026), the Eighth Circuit affirmed a successful compelled

speech facial challenge to a statute which required registered sex offenders to post a sign at their residence on Halloween which said "[n]o candy or treats at this residence." *Id.* at 1106, 1109. In upholding that ruling, the Eighth Circuit stated, "narrow tailoring does not require 'perfect' tailoring. Here, however, there is insufficient evidence to support the State's assertion that the sign mandate is the least restrictive means of achieving its goals." *Id.* at 1108.

In *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019), the court held that a state law requiring sex offenders to report internet identifiers to law enforcement was a facially unconstitutional burden on free speech and did not even pass intermediate scrutiny. *Id.* at 1329-31. In reaching this conclusion, the court considered many things including that "the Act applies to broad swaths of lawful speech[,]" as opposed to unlawful communication with minors, and that the reporting requirements applied for life without regard to the risk the sex offender actually posed to the community. *Id.* Based on the facts alleged by Doe, Kentucky's statute may suffer from some of the same tailoring problems.

Courts have additionally held that status identification requirements related to sex offenders are a form of compelled speech. *See id.* at 1324 (the requirement that "CRIMINAL SEX OFFENDER" be printed on state issued identification cards was compelled speech and was not the least restrictive means of advancing a compelling state interest); *State v. Hill*, 2020-0323 (La. 10/1/20), 341 So. 3d 539, 545 (an identification card branding the holder as a sex offender was compelled speech and a content based regulation which did not pass strict scrutiny). It must be noted that Kentucky's social media identification statute differs from the statutes in *Marshall* and *Hill*. Doe is not being required to proclaim his status as a sex offender, and therefore his membership in a highly unpopular social group, every time he posts on social media. His status

as a sex offender would presumably remain unknown unless disclosed by him. Regardless, name disclosure is compelled.[2]

Legislation which compels speech is analyzed under strict scrutiny to determine constitutionality. *See Riley*, 487 U.S. at 795; *Reed*, 576 U.S. at 163. Under that standard of review, the law compelling speech is "justified only if the government proves that [it] [is] narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. At this stage, it is impossible to say whether Kentucky's statute would meet or fail strict scrutiny. As the Sixth Circuit noted, there are a number of unresolved questions, particularly surrounding the law's scope, which are pertinent to the question of tailoring. *See Burlew*, 165 F.4th at 533-34. These questions include what it means under the law to "control" an account, where the legal name must actually appear on the account, and how this law has been operating to enforce the name requirement. These unanswered questions and underdeveloped facts make it impossible to say on a motion to dismiss whether the government has met its burden of showing that the law passes strict scrutiny or even intermediate scrutiny. Based on cases striking broad speech restrictions for sex offenders as facially unconstitutional and others holding that identification requirements for sex offenders are compelled speech, and the facts asserted by Doe have stated a plausible claim for relief. Therefore, the claim must be allowed to proceed, and each party should be allowed to develop the factual record.

[2] The Court does not foreclose the possibility that KRS 17.544 is a disclosure requirement. The Sixth Circuit noted just such a possibility when it stated that "[t]he Kentucky law merely requires a *disclosure* of the sex offender's legal name on these accounts." *Burlew*, 165 F.4th at 535-36 (citing KRS 17.544(2)). A required disclosure is inherently compelled, but unlike compelled speech, disclosure requirements are reviewed under a lesser level of scrutiny known as "exacting scrutiny." *See John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010). Because neither party discussed disclosure requirements as they may concern compelled speech, the issue is not decided here.

Opposing the compelled speech claim, Burlew primarily argues that this law does not regulate the content of speech, but rather the class of speakers themselves. (Def.'s Mot. Dismiss 12). Burlew contends that such speaker-based regulations "do not trigger heightened scrutiny if the government can justify them based on some special characteristic that the regulated speaker possesses." (Def.'s Mot. Dismiss 12). It is true that the Supreme Court recently held that "[strict] 'scrutiny is unwarranted when the differential treatment is "justified by some special characteristic of" the particular [speaker] being regulated.'" *TikTok Inc. v. Garland*, 604 U.S. 56, 72-73 (2025) (alteration in original) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 658 (1994) (internal citations omitted)). However, in *TikTok*, the Supreme Court emphasized "the inherent narrowness of [its] holding[,]" explaining that "[a] law targeting any other speaker would by necessity entail a distinct inquiry and separate considerations." *Id.* at 73.

To declare that sex offenders who have committed offenses against minors all share a "special characteristic," and therefore differential treatment is justified, would be premature without factual analysis of some defined considerations and that "distinct inquiry." It is not enough to categorize a group based on a single characteristic and then declare that they have a special characteristic. There must be more.

**B. <u>As-Applied Challenge</u>**

Doe asserts that KRS 17.544 is unconstitutional as applied to him for three reasons. First, he argues that it unconstitutionally infringes on his right to engage in protected anonymous speech on social media. Second, he argues, this time as applied to him, that the statute violates the unconstitutional conditions doctrine. Finally, Doe again argues that Kentucky's statute as applied to him compels his speech in violation of the First Amendment. "An as-applied claim requires a challenger to show only that a law violates the Constitution as applied to the *specific conduct* that

the challenger seeks to undertake." *Burlew*, 165 F.4th at 529. In this case, Doe alleges that the specific conduct he wishes to undertake is public debate over the efficacy of sex offender registries, arguing that they are ineffective at achieving their stated goal. (2d Am. Compl. ¶¶ 25, 32).

**1. *Anonymous speech rights***

Doe first argues that his First Amendment right to speak on social media anonymously is being unconstitutionally restricted by the requirement that he disclose his identity on every account he controls. (2d Am. Compl. ¶¶ 40-47). The Sixth Circuit has recognized that a right to speak anonymously exists, explaining:

> An author's decision to remain anonymous is "an aspect of the freedom of speech protected by the First Amendment." While the right to anonymous speech is paramount to protect the political speech of persecuted groups, it also protects advocates who "may believe [their] ideas will be more persuasive if [their] readers are unaware of [their] identity." Internet speech receives the same First Amendment protection as other speech. "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'"

*Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835-36 (6th Cir. 2017) (alterations in original) (internal citations omitted) (citation omitted); *see also Doe v. Harris*, 772 F.3d 563, 574 (9th Cir. 2014) (First Amendment scrutiny was warranted when the Act burdened registered sex offenders' willingness to engage in anonymous online speech). "A law is unconstitutional under the First Amendment if it operates as an outright ban or impermissibly burdens anonymous online speech." *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1207 (M.D. Tenn. 2021) (citation omitted). Even so, the right to speak anonymously online is not "freewheeling." *Burlew*, 165 F.4th at 535. "[A] state may permissibly infringe upon this right when its interest is important enough and the law is appropriately tailored to meet the stated interest[,]" even if the speech burdened is political. *Doe #1*, 518 F. Supp. 3d at 1207 (quoting *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010)). It

cannot be disputed that Doe has a First Amendment right to speak anonymously online, subject to some level of First Amendment scrutiny.

Burlew does not dispute this fact but instead primarily argues that this statute, even though it has some burden on speech, is content neutral, and therefore must only pass intermediate scrutiny. (Def.'s Mot. Dismiss 6). Doe counters that the statute is content based and therefore subject to strict scrutiny. (Pl.'s Resp. Def.'s Mot. Dismiss 12-13). Strong arguments can be made for both sides.

In analyzing statutes which echo the substance of KRS 17.544, courts have held that mandatory identity reporting requirements preventing online anonymity were merely content neutral. *See Craven v. Rausch*, No. 1:23-CV-00180-JRG-CHS, 2025 WL 3291979, at *12 (E.D. Tenn. Nov. 26, 2025) (citation omitted) ("Content-neutral regulations—such as the internet identifier reporting requirement—are constitutional if they satisfy intermediate scrutiny"); *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *17-18 (M.D. Tenn. Nov. 9, 2017) (a law was content neutral because it did not target any particular speech by its content, even though it placed a burden on sex offenders who might wish to protest registry and reporting laws by stripping them of their online anonymity); *Doe v. Snyder*, 101 F. Supp. 3d 672, 700 (E.D. Mich. 2015) (alteration in original) (citation omitted) (Michigan sex offender registration act's internet reporting provisions, which required reporting any identifiers used on online instant messaging and email websites, were "content neutral in that they restrict speech without reference to the [speech's] content"); *Doe v. Harris*, 772 F.3d 563, 574-76 (9th Cir. 2014) (a requirement to report immediately all online identifiers was content neutral because although "the Act singles out registered sex offenders as a category of speakers, it does not target political speech content, nor is it a ban on speech"). In *Doe v. Harris*, the law was still content neutral even when it was

comparatively easy for members of the public to obtain from law enforcement the identifying information. *Harris*, 772 F.3d at 580.

Kentucky's statute is, of course, distinguishable from each of these content-neutral cases because the statute requires disclosure of identity directly to the speaker's audience. Even in *Doe v. Harris*, despite the ease of obtaining the identifying information, that information was only reported to law enforcement. Registered sex offenders were still free to engage in anonymous discussion with the public online. Not so with Kentucky's law.

This distinction lends support to the argument that the Kentucky law is more than a reporting requirement, but is instead forcing sex offenders to alter the content of their online speech, making it content based, which finds some support in Supreme Court precedent. *Riley*, 487 U.S. at 795 ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech."). In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), the Court distinguished mandatory reporting requirements from "compelled self-identification on all election-related writings[,]" and applied exacting scrutiny to the regulation, a scrutiny level between intermediate and strict. *Id.* at 355. Kentucky's self-identification requirement is particularly burdensome on political speech as applied to Doe because just as in *McIntyre*, Doe's alleged social media posts are "personally crafted statement[s] of a political viewpoint." *Id.*

Furthermore, relying on *McIntyre*, a sister court recognized that "[i]f the state wants to regulate what facts are to be included about the identity of a speaker, then that regulation is content-based . . . ." *Rosemond v. Markham*, 135 F. Supp. 3d 574, 586 (E.D. Ky. 2015) (citation omitted). "[T]he Supreme Court has also suggested a distinction between the *mandatory disclosure in public of a speaker's identity* and the requirement that a speaker provide information to the government that could later be used to trace speech back to its source." *Shurtleff*, 628 F.3d at 1222 (emphasis

added). After finding the forced disclosure statute to be content neutral, it was critical to the *Shurtleff* court that the identifying information reported to police was safeguarded from the public, even if conceivably obtainable. *Id.* at 1224-25. Again, Kentucky's law requires the identifying information be disclosed *directly* to the public.

Determining whether this law is content based or content neutral is not necessary at this juncture because, from the facts alleged at this early motion stage, the statute would not pass intermediate scrutiny as applied to Doe. In order to survive intermediate scrutiny, the statute must be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (citation omitted). As the Supreme Court has explained:

> [T]o be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests. Such a regulation . . . need not be the least restrictive or least intrusive means of serving the government's interests. But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.

*Id.* (internal quotation marks omitted) (internal citations omitted) (citation omitted).

In a recent case, a sister court denied a motion to dismiss challenging allegations similar to this case, saying:

> While Plaintiff's factual allegations in support of this claim are somewhat thin, he plausibly alleges that the internet identifier reporting requirement burdens his political speech and therefore is not narrowly tailored to him. Further factual development of the record will help the Court determine whether this reporting requirement satisfies intermediate scrutiny.

*Craven*, 2025 WL 3291979, at *12.

Another court applied intermediate scrutiny and declined to dismiss a case in which plaintiffs argued that their anonymous online speech rights were restricted by required reporting of all usernames and account information of social media and private messaging websites to law enforcement. *Haslam*, 2017 WL 5187117, at *18. It reasoned:

> Even assuming that the Act serves a significant governmental interest, the Court is unable to conclude that it is sufficiently narrowly tailored without the benefit of a full factual record. At this stage, the Court can only speculate as to the real-world effect of the Act on internet use, as well as the efficacy of alternative requirements in furthering the government's significant interests. The Court accordingly will not dismiss.

*Id*.

The importance of the government's interest in protecting children online is not disputed. While Kentucky's law is more narrowly tailored than Tennessee's—only requiring identification on those websites where children are likely present, not on all internet accounts—it also imposes a higher burden on Doe's political speech. Kentucky's law requires identification to the public at large, not simply reporting username information to the police. This burden is on all speech he may engage in on social media including political speech, commercial speech, personal speech and the like, not merely private communications. These private communications are presumably the type of speech which the government is trying to regulate, and which it has the strongest interest in regulating.

A substantial portion of this burden, as applied to Doe, does nothing to advance the government's significant interest in protecting children online. *See McCullen*, 573 U.S. at 486. It was significant to the district court in *Haslam* that such law enforcement reporting requirements had a chilling effect on political speech because those offenders required to report might refrain from speaking against the act which governed them out of concern that doing so might antagonize authorities charged with enforcing that very act. *Haslam*, 2017 WL 5187117, at *17. Doe has alleged a similar chilling burden on his speech.

Burlew finally argues that the Kentucky law is a disclosure requirement. "To determine whether a rule is a disclosure requirement, or something more, we look to see the effect of the provision. Disclosure and disclaimer rules require the provision of information, and only

incidentally prevent speech when the speaker is unwilling to provide the additional required information." *Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 421 (6th Cir. 2025) (quoting *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014)). On appeal of this case, the Sixth Circuit observed that "[t]he Kentucky law merely requires a *disclosure* of the sex offender's legal name on these accounts." *Burlew*, 165 F.4th at 535-36. Burlew is correct that disclosure requirements which burden the First Amendment are scrutinized to a lesser standard than pure content-based regulation, but he is incorrect to assume that a disclosure requirement is automatically content neutral, and therefore subject only to intermediate scrutiny, merely *because* it is a disclosure requirement.

When a disclosure requirement burdens something like political speech, it is analyzed under "exacting scrutiny" which "'requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest.'" *John Doe No. 1*, 561 U.S. at 196 (quoting *Citizens United v. F.E.C.*, 558 U.S. 310, 366-67 (2010)) (applying exacting scrutiny to a disclosure requirement which allowed the identities of petition signers to be viewed by the public). This level of scrutiny lies somewhere between intermediate and strict. Neither party has discussed whether Kentucky's law meets or fails this level of scrutiny. At this stage, the Court does not foreclose the possibility that this law *is* a disclosure requirement but even if it is, because the law has not passed intermediate scrutiny at this time, applying a higher level of scrutiny would not change the result. Each party should have the opportunity to develop further facts particularly related to the tailoring of KRS 17.544 and make further legal arguments on this issue. Burlew's motion to dismiss Doe's anonymous speech, as-applied challenge is accordingly denied.

### 2. *Unconstitutional Conditions Doctrine*

Doe next asserts that Kentucky's law is unconstitutional as applied to him under the unconstitutional conditions doctrine. (2d Am. Compl. ¶ 55). His argument proceeds identically to his facial arguments under the same doctrine, and they are likewise insufficient for the same reasons. This contention is certainly conceptually interesting but this doctrine has never been applied outside the specific context of government benefits. *See Koontz*, 570 U.S. at 604; *Agency for Int'l Dev.*, 570 U.S. at 209-10, 213; *Sheetz*, 601 U.S. at 272, 274-76; *Perry*, 408 U.S. at 595-96. The as-applied unconstitutional conditions claim is therefore dismissed.

### 3. *Compelled Speech*

Doe finally claims that Kentucky's law is unconstitutional as applied to him because it compels his speech. (2d Am. Compl. ¶¶ 60-61). As applied to him, the assertion that Kentucky's statute unconstitutionally compels his speech is stronger than the case for facial invalidity. Because this identification law requires Doe to attach his name to *all* his speech on social media, he will be required to speak his name, even when he is engaged in politically sensitive conversations, something he alleges he does. (2d Am. Compl. ¶ 25). In *Talley v. California*, 362 U.S. 60 (1960), the Supreme Court held "that there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified. The reason for those holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." *Id.* at 65 (internal citations omitted). Doe has alleged that he has received threats because of the nature of his political speech and that he fears those threats will cause harm if he is forced to disclose his full identity. (2d Am. Compl. ¶¶ 26, 28). This is just the sort of deterrence that concerned the court in *Talley*.

The First Amendment protections against compelled speech apply not only to statements of belief or opinion but also statements of fact, such as a name. *See Hurley*, 515 U.S. at 573 ("[T]hat a speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid . . . ." (citing *McIntyre*, 514 U.S. at 341-42; *Riley*, 487 U.S. at 797-98); *see also Riley*, 487 U.S. at 797. For many of the same reasons that Doe's facial claim is plausible, the as-applied claim is similarly plausible.[3]

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 50) is **GRANTED IN PART** as to Count II and **DENIED IN PART** as to Counts I and III.

**Greg N. Stivers, Judge**
**United States District Court**
October 8, 2026

cc: counsel of record

[3] As previously discussed, it is possible that this law is a disclosure requirement rather than pure compelled speech. As noted, disclosure requirements are scrutinized to a lower standard which may affect the ultimate merits of the claims.